UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARK DEMMA,

    Plaintiff,

v.

BEATPORT, LLC, et al.,

    Defendants.

Case No. 23-cv-05090-WHO

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: Dkt. No. 13

Plaintiff Mark Demma sues his former employer, Beatport LLC, his former supervisor (Sedin Dugum), and the Chief Technology Officer ("CTO") (Sean Sullivan), for harassment and termination. Beatport moves to dismiss the claims against it and the individual defendants (who have not appeared), arguing that Demma's complaint fails to contain sufficient allegations to support each of the claims asserted. Its motion is GRANTED with leave to amend concerning the claims for harassment and failure to prevent harassment and DENIED for the claims of discrimination and wrongful termination.[1]

## BACKGROUND

Demma alleges the following regarding his employment and termination at Beatport. Starting in January 2021 and continuing until his termination, he was employed as the Director of Site Reliability Engineering. Compl. ¶ 1. Defendant Dugum was Beatport's Director of Engineering and Demma's supervisor, and defendant Sullivan was Beatport's CTO, during the relevant time. *Id*. ¶¶s 3, 4.

On April 23, 2023, Dugum "excoriated" Demma during a work meeting and blamed him for issues on Demma's team. *Id*. ¶ 22. The next day, in a one-on-one meeting, Demma explained

---

[1] This matter is appropriate for resolution on the papers. *See* Civ. L.R. 7-1(b). The December 13, 2023, hearing is VACATED.

to Dugum that his conduct the prior day made him "afraid" to speak up; Dugum then "again excoriated" Demma. *Id*. ¶ 23. Dugum went further and told Demma that he had heard that Demma had been discussing compensation with other Beatport employees and that executives were "upset" by that conduct. *Id*. Dugum ordered Demma to stop having compensation-related discussions with other employees. *Id*.

In the days that followed, Beatport executives agreed with Demma that Dugum had acted inappropriately and speculated that the hostility was the result of "cultural differences." *Id*. ¶¶ 24-25. But as months passed, Demma alleges that no Beatport executive took any steps to prevent Dugum "from further harassing" Demma and took no corrective action to curb Dugum's "hostile and harassing behavior." *Id*. ¶ 27. Dugum "continued to further harass and be hostile towards" Demma. *Id*. ¶ 29.

On June 23, 2023, Demma asserts that defendant Dugum terminated Demma's employment in retaliation for his discussing compensation with other employees and/or because of Demma's sexual orientation. *Id*. ¶ 30. The termination was made on the "pretext" of Demma having "performance-related issues" although he received regular praise in his job. *Id*. ¶ 31.

Demma filed this Complaint in Superior Court for the County of San Francisco on August 21, 2023. He asserts causes of action for: (1) wrongful discharge in violation of public policy against all three defendants, alleging two theories--Dugum terminated Demma because Demma was engaged in protected activity (discussing compensation with other employees, conduct that is protected by California's Labor Code sections 232 & 923) and/or because Demma is gay, Compl. ¶ 40; (2) harassment based on sexual orientation against defendant Dugum in violation of California's Fair Employment and Housing Act ("FEHA," Cal. Govt. Code § 12940 *et seq*.), because of Dugum's public and private "excoriation" of Demma, Compl. ¶¶ 22-24, 29, 52-53; (3) failure to prevent harassment based on sexual orientation against all defendants, in violation of FEHA and because of the failure of Sullivan and other Beatport executives to prevent further harassment by Dugum against Demma; and (4) discrimination/wrongful discharge based on sexual orientation against all defendants, resulting in his termination in violation of FEHA.

Beatport removed the case to this court on October 4, 2023, based on diversity jurisdiction.

Beatport now moves to dismiss or in the alternative for a more definite statement regarding the bases for Demma's claims against it and the individual defendants.

**LEGAL STANDARD**

Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

**I.    DISCRIMINATION/WRONGFUL DISCHARGE**

    **A.    Legal Standard**

It is unlawful under FEHA "[f]or an employer, because of the . . . sexual orientation . . . of

3

any person, to . . . discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940(a). The California Supreme Court has explained that "[b]ecause of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000). As a result, California courts have adopted the *McDonnell Douglas* framework for evaluating these claims. *Id.; see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Although that framework ultimately calls for a burden-shifting analysis, evidence is not at issue on a 12(b)(6) motion, so Demma need only plausibly allege a prima facie case. While "[t]he specific elements of a prima facie case may vary depending on the particular facts," the plaintiff generally "must provide evidence that (1) he was a member of a protected class, (2) . . . was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Guz*, 24 Cal. 4th at 355. Demma, therefore, must plead some plausible connection between his termination and discrimination. *Guz*, 24 Cal. 4th at 355. To be sure, employment discrimination plaintiffs will not always have all of the information related to the behind-the-scenes process that went into their adverse employment decision when they file their complaint. But they must still plead some circumstance suggesting that the employment action was discriminatory as to them. *Id*.

### B. Sufficiency of Allegations against Beatport

Demma alleges that Dugum publicly and privately excoriated him during meetings in April 2023, and that defendant Sullivan indicated that Dugum's behavior was unacceptable and likely due to "cultural differences" between Demma and Dugum being "hypermasculine." Compl. ¶¶ 22-23, 25-29. Demma took the "cultural differences" reference by Sullivan to mean Dugum's "discomfort and disdain for queer men." *Id*. ¶ 26. Demma alleges that shortly thereafter, Dugum used the "pretext" of poor performance to fire him. *Id*. ¶ 31. Prior to this, Demma had "received regular praise " at work and during his April 2023 review "no one at Beatport had anything meaningfully negative to say about Plaintiff." *Id*.

4

Beatport argues that Demma's allegations are insufficient to state a FEHA claim for sexual orientation discrimination because there are no facts supporting a causal connection between his being a gay man and his termination other than the "cultural differences" comment made by defendant Sullivan. Beatport contends that comment is insufficient to establish that Dugum's motivation was based on Demma's sexual orientation. It also notes that Demma fails to allege any facts showing that he was treated differently than others, so cannot show "disparate treatment." case.

Demma need not allege facts showing that he was treated differently than other gay men (or men perceived to be gay) at Beatport to prove that he was terminated by Dugum because he was gay in violation of FEHA. Demma's allegations, while thin, are plausible and sufficient to state a claim for discrimination as a result of his sexual orientation. He identifies conduct showing Dugum's hostility towards him in two specific meetings, alleges that further hostility was directed towards him by Dugum, and states that Sullivan and other executives at Beatport agreed with Demma that Dugum's conduct was inappropriate. And Demma adequately alleges that Dugum fired him for poor performance shortly after the hostile conduct started, explaining the basis for his belief that the performance justification was pretextual given his largely positive reviews. Those allegations are sufficient to state a claim of employment discrimination in violation of FEHA.

The motion to dismiss the discrimination/wrongful discharge claim asserted against Beatport under FEHA is DENIED.

**II.    HARASSMENT**

   **A.    Legal Standard**

"FEHA prohibits harassment of an employee." *Lawler v. Montblanc N. Am.*, LLC, 704 F.3d 1235, 1244 (9th Cir. 2013); *see also* Cal. Gov't Code § 12940(j). A plaintiff must demonstrate that "(1) she is a member of a protected group; (2) she was subjected to harassment because she belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment." *Id*. "Harassment cannot be occasional, isolated, sporadic, or trivial; rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." *Aguilar v. Avis Rent A Car Sys., Inc*., 21 Cal. 4th 121, 131 (1999) (internal

5

alterations and citations omitted).

California courts have drawn certain lines between harassment and discrimination claims. Although both require membership in a protected group, actions are not generally harassment under FEHA if they are "of a type necessary to carry out the duties of business and personnel management." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 65 (1996). Such actions include "commonly necessary personnel management actions" like "hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or non-assignment of supervisory functions, deciding who will and who will not attend meetings, [and] deciding who will be laid off." *Id.* at 64–65. Harassment, in contrast, "consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management." *Lawler*, 704 F.3d at 1245. In separating commonly necessary personnel management actions from harassment, FEHA does not permit those actions to be discriminatory. Rather, "[t]hese actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment." *Janken*, 46 Cal. App. 4th at 65.

Additionally, "some official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 709 (2009), as modified (Feb. 10, 2010). This message can be established, the California Supreme Court explained, "when the actions establish a widespread pattern of bias." *Id.*[2]

### B.     Sufficiency of Allegations

The only allegations regarding harassment in the Complaint are the excoriation by Dugum on April 26 and 27, 2023, and further unspecified "excoriation" occurring in the next "few

---

[2] Demma argues that I should not reach Beatport's challenge to the sufficiency of the harassment claim alleged solely against Dugum, who has not entered an appearance. Opposition [Dkt. No. 18] at 2-3. The FEHA harassment claim is integrally related to the failure to prevent harassment FEHA claim that is asserted against Beatport. Accordingly, I will reach the sufficiency of the harassment claim. *See Silverton v. Dep't of Treasury of U. S. of Am.*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.").

1    months," culminating in Demma's termination by Dugum.  The termination is the subject of a

2    discrimination claim, not independently actionable as harassment.  *See Janken*, 46 Cal. App. 4th at

3    65.³  The "excoriation" occurred in the context of Dugum's apparent frustration with the work of

4    Demma and/or Demma's team.  Those acts arguably fall within the "business and personnel

5    management" realm of a discrimination and not a harassment claim.

6         Even if the excoriation of Demma by Dugum constitutes harassment, Demma has not

7    alleged sufficient facts showing that it rises to the level of actionable harassment under FEHA.

8    Being yelled at for work-performance issues on two days does not, by itself, rise to the level of a

9    "widespread pattern of bias" or conduct "so severe that it created a hostile work environment."

10   *See, e.g., Roby*, 47 Cal. 4th at 709 (finding sufficient evidence of a widespread pattern of bias in

11   light of supervisor's rude comments and behavior, which occurred on a daily basis, and also the

12   supervisor's shunning of the plaintiff during weekly staff meetings, the belittling of the plaintiff's

13   job, and the supervisor's reprimands of the plaintiff in front of coworkers).  Further, while use of

14   particularly offense or hostile words, tone, or manner by a supervisor could conceivably rise to the

15   level of harassment – even if not widespread – there are no facts alleged that could support that

16   type of harassment claim.  *See, e.g., Aguilar*, 21 Cal. 4th at 131 (harassment not alleged where a

17   single comment, that was not facially discriminatory, was "isolated" and relatively "trivial" rather

18   than severe, "concerted," or "routine").

19        Demma's harassment claim is DISMISSED, with leave to amend.  If hechooses to amend

20   this claim, he must provide more facts regarding the words, tone, and manner of the excoriation on

21   April 26 and 27, 2023 and more details on the further harassment that occurred in the months that

22   followed (what happened and when) to attempt to allege a claim for harassment under FEHA.

---

³ That is not to say that evidence of discrimination cannot be used to support a claim of harassment.  In *Roby v. McKesson Corp.*, 47 Cal.4th 686, 709 (2009), the California Supreme Court held that "[a]cts of discrimination provide evidentiary support for a harassment claim by establishing discriminatory animus on the part of the manager responsible for the discrimination, thereby permitting the inference that rude comments or behavior by that same manager was similarly motivated by discriminatory animus."  Accordingly, "[n]othing prevents a plaintiff from proving these two violations with the same (or overlapping) evidentiary presentations." *Id*.

## III. FAILURE TO PREVENT HARASSMENT

FEHA explicitly provides causes of action for failure to prevent discrimination and harassment. Cal. Gov't Code § 12940(k). Demma identifies the executives (Sullivan and Solely) with whom he discussed the harassment he was suffering at the hands of Dugum and alleges that no one at Beatport took steps to prevent that harassment. But as Demma has failed to allege sufficient facts to state a claim for harassment under FEHA, this claim must likewise be DISMISSED with leave to amend.

## IV. WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

### A. Legal Standard

In *Tameny v. Atlantic Richfield Co.*, the Supreme Court of California carved out a common law exception to California's policy of at-will employment for wrongful termination in violation of public policy. *See Tameny v. Atl. Richfield Co.*, 27 Cal.3d 167 (1980). The court held that "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Id*. at 170. This type of action, now known as a "*Tameny* claim," can be alleged where a plaintiff identifies a policy of the State of California that is "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental." *Stevenson v. Superior Ct.*, 16 Cal. 4th 880, 894 (1997).

### B. Sufficiency of Allegations

Demma argues that he has adequately alleged this claim based on two theories. First, he alleges that he was terminated due to his sexual orientation. As shown above, Demma has adequately alleged this claim under FEHA.

Second, Demma alleges that Dugum knew that Demma was discussing compensation levels with other employees, that Dugum directed him to stop doing so, and that he was terminated by Dugum shortly thereafter, at least in part because of Demma's protected activity. Compl., ¶¶ 23, 31, 36, 40, 41. Discussing compensation with fellow employees is protected conduct under

1  California Labor Code sections 232 & 923 and the National Labor Relations Act. *See Grant-*

2  *Burton v. Covenant Care, Inc.*, 99 Cal. App. 4th 1361, 1378 (2002), *as modified on denial of reh'g*

3  (July 30, 2002) (affirming *Tameny* claim based on firing for discussing compensation, conduct

4  protected under Labor Code sections 232 and 923, as well as the National Labor Relations Act).

5  Beatport does not dispute that a termination in violation of public policy claim could be

6  based on the conduct Demma alleges, but argues Demma must provide more details "regarding the

7  pled 'compensation-related conversations,' to establish" the protected activity as well as facts

8  supporting the "nexus" between those alleged conversation and Demma's termination. *See* Reply

9  at 13-14.

10  Demma's allegations are sparse but sufficient. He alleges:

> The day after the NextGen meeting, Defendant [Dugum] told Plaintiff: (1) that Defendant [Dugum] had heard Plaintiff had been discussing compensation with other Beatport employees; (2) that unspecified Beatport executives were upset because Plaintiff had been discussing compensation with other Beatport employees; and (3) ordered Plaintiff to stop having compensation-related conversations with other Beatport employees.
> . . .
> 40. Plaintiff's employment at Beatport was terminated in retaliation against Plaintiff for Plaintiff having discussed compensation with other Beatport employees and/or on account of Plaintiff's sexual orientation. (Hereafter, "Plaintiff's Termination.").
> . . .
> 45. There is a clear nexus between Plaintiff's protected activity—discussing compensation with other Beatport employees; and being a gay man) and Plaintiff's Termination from Beatport.

20  Compl. 36, 40, 45. Given the short time between Dugum's initial comments (April 2023) and

21  Demma's termination (June 2023), the nexus between the protected activity (discussing

22  compensation with other employees) and the termination is plausibly alleged.

23  The motion to dismiss the claim for termination in violation of public policy is DENIED.

## CONCLUSION

25  The motion to dismiss is GRANTED on the harassment and failure to harassment claim.

26  Dismissal is with leave to amend and any amended complaint shall be filed by January 8, 2024.

27  The motion is DENIED on the discrimination and wrongful termination claims.

28  The parties shall comply with General Order No. 71, governing Initial Discovery Protocols

9

For Employment Cases Alleging Adverse Action.

**IT IS SO ORDERED.**

Dated: December 11, 2023


William H. Orrick
United States District Judge